MASSACHUSETTS TRUST COMPANY *vs.* SIMON MANUFACTURING COMPANY & another.

Suffolk.    November 9, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To reach and apply property fraudulently conveyed. *Fraud,* Against creditors. *Wrongdoer without Remedy.*

In a suit in equity against a corporation and a third person by a creditor of the corporation, it appeared that, with intent to hinder, defeat and defraud its creditors, current funds of the corporation during a period of seven months were paid to the third person and were deposited by him in a bank account in his own name; that he had full knowledge of and was a party to the fraudulent arrangements; that he thus received $15,000 and paid therefrom for obligations of the corporation about $12,700; that at the end of the seven months' period a

new corporation was formed to which were transferred without notice to the creditors all the assets of the old corporation except the balance in the hands of the third person; that the third person was made treasurer of the new corporation and used the same bank account standing in his individual name for the purposes of that corporation; and that thirty-six shares of its capital stock were conveyed to him without consideration. The debt due to the plaintiff was $7,396. *Held,* that

(1) A decree was warranted directing the individual defendant to pay to the plaintiff the entire amount of the debt owed to the plaintiff by the defendant corporation;

(2) The individual defendant having participated in the fraud upon the corporation's creditors, he was not entitled to have the plaintiff's relief against him limited to the balance of $2,300 remaining in his hands at the time of the unlawful transfer to the new corporation of the other assets of the defendant corporation;

(3) The plaintiff also was entitled to a decree reaching and applying toward payment of the debt due it the thirty-six shares of the capital stock of the new corporation standing in the name of the individual defendant.

BILL IN EQUITY, filed in the Superior Court on May 27, 1919, and afterwards amended, against Simon Manufacturing Company and Moses Goldman.

The allegations of the bill as amended were in substance as follows:

On or about December 23, 1918, the plaintiff obtained a final decree in the sum of $11,766.76 against the defendant Simon Manufacturing Company, which remained unsatisfied in the sum of $7,396.53. On or about March 1, 1915, and up to October 4, 1915, the Simon Manufacturing Company, intending to defraud, defeat and delay its creditors, particularly the plaintiff, transferred money in the form of checks and money in specie without any consideration to the defendant Moses Goldman with the intention of defrauding as aforesaid, the defendant Goldman, well knowing such purpose and actively participating therein, "and now the Simon Manufacturing Company is a naked corporation shorn of all its assets and has no property that can be attached or taken on execution in an action at law that will satisfy any judgment that might be rendered against it." The defendant Goldman had no property that might be reached and applied to satisfy any decree that might be entered for the plaintiff in this cause except thirty-six shares of stock in a corporation known as the Simon Coat Company.

The prayers of the bill were for injunctive relief *pendente lite* and that the defendant Goldman be ordered to account to the

plaintiff for all checks and money received by him from the Simon Manufacturing Company and to satisfy such decree as might be entered; and for general relief.

The defendant Goldman demurred to the bill as amended. The demurrer was heard by *Lawton,* J., and by his order an interlocutory decree was entered overruling it. The pleadings then having been completed, the suit was referred to a master. Findings of the master relating to the disposition made of funds of the Simon Manufacturing Company in the hands of Goldman, described in the opinion, after the incorporation of the Simon Coat Company, were as follows:

"The Simon Coat Company started with no bank account of its own, and no working capital other than the $2,235.26 in Goldman's hands as above. Up to the middle of February, 1916, when, the merchandise creditors of the Simon Manufacturing Company having been paid in full, the Simon Coat Company started a bank account of its own, the funds were all handled by Goldman as before, all cash receipts, whether from its accounts receivable or those of the Simon Manufacturing Company, being turned over to Goldman, and deposited by him in his individual account at the International Trust Company, against which, as before, he drew his personal checks in payment of debts of both the old and new companies. In this way, after the organization of the Simon Coat Company, the $5,300 worth of notes and accounts receivable of the Simon Manufacturing Company above referred to were all collected, and its merchandise creditors were paid therefrom in full ($4,175.17), in order to maintain the credit of the Simon Coat Company and insure its supply of merchandise; while nothing was paid the money creditors of the Simon Manufacturing Company, with the exception of $300 paid by Goldman to one of them on account of the claim."

Other material findings of the master are described in the opinion. The master's report having been confirmed, the suit was heard by *Lawton,* J., by whose order a final decree was entered for the plaintiff as described in the opinion. The defendant Goldman appealed.

The case was submitted on briefs.

*S. Sigilman,* for the defendant Goldman.

*W. Hirsh,* for the plaintiff.

DE COURCY, J.   The facts on which this suit is based appear in the earlier case between these parties, reported in 233 Mass. 85, and need not be repeated at length.   In brief, as now stated in the master's report, the Simon Manufacturing Company, the management and control of which were in the hands of Isaac Simon, became financially involved in the spring of 1915.   In March, 1915, this company ceased to have a bank account of its own; and in order to protect its funds from creditors, its cash receipts were turned over to the defendant Goldman, who deposited them in his name in a trust company.   Goldman drew his personal checks in payment of the company's bills and other expenses throughout the rest of the business life of the corporation.   Down to October 4, 1915, he thus received, and mixed with his own funds, the moneys of the manufacturing company to the amount of at least $15,000.

Simon organized the Simon Coat Company under the laws of this Commonwealth on October 4, 1915, and said Goldman became its treasurer.   The assets of the manufacturing company except the funds in Goldman's hands were transferred to the Simon Coat Company without consideration; and the new company continued the same business in the same place, with the same machinery, fixtures and merchandise as before.   On said date Goldman had in his hands $2,235.26 belonging to the Simon Manufacturing Company.   In the earlier suits, in all of which the Simon Coat Company was a party defendant, it was adjudged that the above transfer to the coat company was fraudulent as to creditors, and that the value of the property so transferred was $10,650.05.   By the final decrees it was ordered that the Simon Coat Company should pay this sum to the respective plaintiffs therein, in the order of priority named, together with the $2,235.26 in Goldman's hands.   The total amount, $12,885.31, and interest, was paid before the present suit was brought.

In the case under consideration the Superior Court, in accordance with the findings of the master, decreed that both defendants were liable to the Massachusetts Trust Company for the unpaid balance of $7,396.53, with interest.   The only appeal from the final decree was taken by the defendant Moses Goldman.   The master finds that he had full knowledge of and was a party to the fraudulent arrangement to transfer the funds of the manufactur-

ing company to an account in his name, and have him act as its banker. As already appears, he thus received from March to October 4, 1915, at least $15,000. He is chargeable with this amount in favor of the plaintiff, who was then and is now a creditor of the manufacturing company, the real owner of that money. If, as is argued, he paid some creditors of the manufacturing company from this fund he cannot be credited with such payments, made in pursuance of a dishonest purpose to defraud other creditors, for the reasons stated in the earlier case. *Manufacturers National Bank* v. *Simon Manuf. Co.* 233 Mass. 85, 90. The Superior Court adjudged that said $15,000 "was fraudulently conveyed by said Simon Manufacturing Company and received by said Moses Goldman and that the said Moses Goldman actively participated in said fraud on or before October 4, 1915, and that by reason thereof is held liable for said sum together with interest." The decree ordering that execution should issue in favor of this plaintiff against Moses Goldman in the sum of $7,633.53 was warranted by the findings of the master. *Webber* v. *Foxborough Co-operative Bank*, 198 Mass. 132. *Gurney* v. *Tenney*, 226 Mass. 277. In the event of Goldman's failure to pay said sum, the decree provided for reaching the thirty-six shares of the capital stock of the Simon Coat Company which he owned when the present suits were brought, and for which he paid the corporation nothing. St. 1910, c. 531, § 2. The conclusion of the master, as quoted in the earlier case, that "The Simon Coat Company is nothing but the Simon Manufacturing Company operating under another name" (233 Mass. 89), is pertinent in this connection. It may be added that the portion of the decree dealing with the sale of the defendant's stock in the Simon Coat Company makes no provision for the issuing of new shares in the name of the purchaser; but as this corporation is not a party in the suit, we cannot modify the decree to meet that situation. Any other details as to the sale which are open to criticism do not injuriously affect the substantial rights of the defendant. The interlocutory decree, overruling the demurrer, and the final decree are affirmed, with costs.

*Ordered accordingly.*