CITIZENS BANK AND TRUST COMPANY & another *vs.*
ROCKINGHAM TRAILER SALES, INC. & others.

Essex.   October 7, 1966. — December 5, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Fraudulent Conveyance.   Equity Pleading and Practice,* Decree, Suit to
reach and apply.

In a suit in equity by creditors against their debtor, a former owner of a
trailer, to reach and apply a sum received by another defendant, a
corporation, upon selling the trailer after purchasing it from the debtor,
conclusions that the debtor's conveyance of the trailer to the corpora-
tion was made with "actual intent . . . to hinder, delay or defraud"
the creditors and was fraudulent under G. L. c. 109A, § 7, and that the
corporation was an active participant in the fraud and not entitled to
any credit for the consideration it paid to the debtor were warranted by
findings by a master that the corporation, which owned the trailer park
where the trailer was located, before purchasing the trailer, prevented
a prospective purchaser thereof from completing an agreement with the
debtor to buy it by insisting that it be moved to another location, that
the sale by the debtor to the corporation occurred about a week later,
at a time when the debtor had no "appreciable assets" other than the
trailer and the corporation knew the debtor was insolvent, and was for
a price substantially lower than the offer of the prospective purchaser,
that the subsequent sale by the corporation was for a price more than
twice the price in the purchase by it, and that upon the sale by the
corporation it did not require that the trailer be moved.   [460–461]
In a suit in equity by creditors to reach and apply to the indebtedness of
the principal defendant money in the hands of a second defendant hav-
ing no obligation to the plaintiffs other than so to apply such money,
the final decree rightly established the indebtedness and ordered the
second defendant to pay such money to the plaintiffs, but further pro-
visions thereof stating that the second defendant was "indebted" to the
plaintiffs were erroneous and should be struck out.   [461–462]

BILL IN EQUITY filed in the Superior Court on May 7, 1962.
The suit was heard by *Ponte,* J., on a master's reports.
*Nicholas J. Decoulos* for the defendant.
*William E. O'Brine* for the plaintiffs.

SPIEGEL, J. This is a bill in equity to reach and apply the sum of $6,500 in the hands of the defendant Rockingham Trailer Sales, Inc. (Rockingham).[1] The suit was referred to a master. The court below entered an interlocutory decree confirming the master's report from which no appeal was taken. A final decree favorable to the plaintiffs was also entered from which decree Rockingham appeals.

We summarize the material facts found by the master in his original and supplemental reports. The defendant Marie A. Bradbury owned a trailer with a cabana attached to it and also owned the trailer park in which the trailer was located. On October 13, 1960, she sold the trailer park to Rockingham. On June 15, 1961, one John Harrington executed an agreement with Mrs. Bradbury in which Harrington agreed to purchase the trailer and cabana for $7,500. He gave Mrs. Bradbury $240 to bind the agreement with the understanding that the trailer and cabana could be kept on the lots they were occupying in the trailer park. One Cataldo, the president of Rockingham, refused to allow the trailer to remain on those lots, but offered to allow Harrington to move it to another lot within the park. The trailer was on a temporary foundation with its wheels removed and electricity and water were supplied to the trailer through couplings which permitted easy detachment. The trailer itself could be prepared for moving at a cost of $250 and the cabana could be dismantled for moving by two men working three days. "[L]ater in the summer of 1961" there were further negotiations between Cataldo and Harrington, but Harrington refused to pay even $7,000 if the trailer and cabana had to be moved.

On June 22, 1961, Rockingham executed an agreement with Bradbury for the purchase of her trailer for the sum of $3,000, "($2,391) of . . . [this] price being for past considerations and debts owed by . . . [Mrs.] Bradbury to Rockingham . . . and the balance of . . . ($609) to be paid in cash." At that time Rockingham was "engaged in the

---

[1] Other defendants are John J. Donovan and Marie A. Bradbury.

purchase and sale of trailers as well as rental of space for trailers, trailers being purchased at wholesale prices and resold at retail.''

On June 26, 1961, a bill of sale for the trailer was given by Mrs. Bradbury to Rockingham. At that time Mrs. Bradbury had no other ''appreciable assets'' and the wholesale book value of the trailer ''according to the New York Mobile Home Book'' was $3,000. At the time of the transfer of title Rockingham knew that Mrs. Bradbury was insolvent. She occupied the trailer as a residence during the period from June 28 to July 12, 1961.

On June 28, 1961, there was an attachment of the trailer in an action brought against Mrs. Bradbury by Kathleen R. Conway, administratrix, one of the plaintiffs in this case. This action was concluded by an agreement for judgment in the sum of $900. On July 12, 1961, there was another attachment of the trailer in an action against Mrs. Bradbury by the Citizens Bank and Trust Company, the other plaintiff in this case. In that action there was a ''finding . . . for the [p]laintiff in the amount of . . . $6,054.67 . . . [plus] costs . . . of . . . $42.87.''[2]

On October 5, 1961, the trailer was sold for $6,500 by Rockingham to John and Hazel Donovan[3] who ''were not aware of any liens or attachments on the [t]railer.'' The trailer was not moved from its original site, and the Donovans lived in the trailer from the date of their purchase.

The master concluded his original report with the statement that ''I find for the Petitioners as to the Respondents, Rockingham . . . and . . . [Mrs.] Bradbury'' and in a supplemental report stated, ''With reference to a finding for specific damages, I find the value of the Trailer and Cabana in issue to be $6,500.00.''

No exceptions were taken to the final report of the master, and thus the only question on appeal is whether the

---

[2] On November 20, 1961, the trailer was seized and sold by a deputy sheriff under executions in these actions. Although bills of sale were prepared no actual sale was made.

[3] In the final decree the judge dismissed the bill as against Donovan.

final decree is warranted by the pleadings and by the findings of the master. *Manufacturers Natl. Bank* v. *Simon Mfg. Co.* 233 Mass. 85, 87.

Rockingham argues that it gave fair consideration for the trailer within the meaning of G. L. c. 109A, § 3,[4] and thus the conveyance was not fraudulent within G. L. c. 109A, § 4,[5] even though the conveyance rendered Mrs. Bradbury insolvent. As will appear from our subsequent discussion, there is adequate evidence to support the decree for the plaintiffs under G. L. c. 109A, § 7, and therefore we need not pass on the validity of Rockingham's assertion that the wholesale market price was fair consideration.

General Laws c. 109A, § 7, states: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." It would have been preferable for the master to have made a specific subsidiary finding of the actual intent required under this statute, but "[s]ince the report shows upon its face all the subsidiary facts which the master had in mind and upon which he based his finding . . ." for the plaintiffs "we must take these subsidiary findings together with the inferences that ought to be drawn from them and reach our own conclusion" (citations omitted). *Murray* v. *Bateman,* 315 Mass. 113, 117. *White* v. *White,* 346 Mass. 76, 79. We think the following facts found by the master and the inferences that can be drawn therefrom are more than adequate to support the conclusion that the conveyance of the trailer and cabana in question was made by Mrs. Bradbury to Rockingham with the actual intent to defraud, hinder or delay Mrs. Bradbury's creditors, and thus was a fraudulent conveyance. See *Virta* v. *Mackey,* 343 Mass. 286, 290.

[4] "Fair consideration is given for property or obligation — (a) When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied . . . ."

[5] "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Rockingham prevented Harrington from completing his agreement to buy the trailer from Mrs. Bradbury for $7,500 by insisting that the trailer be moved. Yet, after only one week had elapsed from the time of Harrington's agreement to purchase the trailer, Rockingham entered into an agreement with Mrs. Bradbury to purchase the same trailer for $4,500 less than Harrington was ready to pay. A bill of sale was given by Mrs. Bradbury to Rockingham four days later, which was just two days before Conway, a creditor of Mrs. Bradbury, attached the trailer. Rockingham subsequently sold the trailer to the Donovans for $6,500, yet in this instance it did not require the trailer to be moved, as it insisted should be done if Harrington were the purchaser. To the contrary, "[t]he trailer was not moved at any time from its original situs." We are of opinion that the master's subsidiary findings enable us to conclude that Rockingham was an active participant in the fraud and therefore the plaintiffs are entitled to prevail. Furthermore, Rockingham is not entitled to any credit for the consideration it paid to Mrs. Bradbury. *Manufacturers Natl. Bank* v. *Simon Mfg. Co.* 233 Mass. 85, 89–90, and cases cited.

There is no substance to Rockingham's argument that "[t]here should not have been an order for an execution . . . against Rockingham . . . ." See G. L. c. 214, § 41.

The remaining point for us to consider is the decree itself. In so far as Rockingham is concerned, the plaintiffs in their bill seek only to reach and apply the proceeds of the sale of the trailer and cabana which Rockingham holds, namely $6,500. The decree, in addition to establishing the indebtedness of Mrs. Bradbury to the plaintiffs, also states that Rockingham is "indebted" to the plaintiffs.[6] Since the plaintiffs do not plead that Rockingham has any obliga-

---

[6] The pertinent part of the final decree reads, "4. Rockingham Trailer Sales, Inc., is indebted to the plaintiffs in the total sum of $6500 with interest from May 7, 1962, the date of the filing of the bill of complaint, to November 19, 1965, in the sum of . . . ($1380.79). 5. Rockingham . . . is indebted to the plaintiff . . . Conway . . . [in] the sum of $900, plus interest . . . . 6. Rockingham . . . is indebted to Citizens Bank and Trust Company in the sum of $6,097.54, plus interest . . . ."

tion to them other than to apply the proceeds of the sale of the trailer to the indebtedness of Mrs. Bradbury, this statement should not have been included in the decree.   *Pickard v. Clancy,* 225 Mass. 89, 95.   The judgments of the plaintiffs were only against Mrs. Bradbury and "it was error to establish liability with respect to . . . [the judgments] as against anyone but . . . [the judgment debtor]."   *David v. Zilah,* 325 Mass. 252, 256.

Accordingly, the final decree is to be modified by striking paragraphs numbered four, five and six thereof,[7] and by striking the words, "to be applied as part payment on the indebtedness to Citizens Bank and Trust Company" in paragraph numbered eight thereof so that it will read as follows: "Rockingham Trailer Sales, Inc., is ordered to pay forthwith to Citizens Bank and Trust Company the sum of six thousand, seven hundred and five dollars and nine cents ($6705.09)."[8]

*So ordered.*

---

[7] See footnote 6.

[8] In the final decree paragraphs 1 and 2 establish the indebtedness of Bradbury to the plaintiffs and remain unchanged; paragraph 3 states that the transfer was fraudulent and remains unchanged.   Paragraph 7 of the decree orders Rockingham to pay to the plaintiff Conway the sum of $1175.70 and remains unchanged.