BERNARD P. VERNE *vs.* BENJAMIN SHUTE & others.

Suffolk.     January 15, 1919. — March 3, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction,* Plaintiff must come into court with clean hands. *Wrong-doer without Remedy.*

One who conveyed his interest in certain real estate to another for the illegal and fraudulent purpose of placing it beyond the reach of the grantor's creditors, cannot maintain a suit in equity against such grantee and a third person, to whom the grantee has sold it for a fair price, to set aside the sale on the ground that the plaintiff was the real owner although the title stood in the name of his grantee, such grantor being unable to invoke the aid of the court to set aside the conveyance of his grantee on the ground of his own previous fraud.

BILL IN EQUITY, filed in the Superior Court on April 23, 1918, to set aside a conveyance of six parcels of land in Lynnfield Center by the defendant Lovejoy, who was alleged to have held said parcels of land for the benefit of the plaintiff as their beneficial owner.

The case was heard by *Fox,* J., who made a memorandum of decision as follows:

"In 1912 the defendant Lovejoy, at the plaintiff Verne's request, took the legal title to the property in question, in order to protect the property from Verne's creditors, and at that time, of his own motion and for Verne's protection, handed him the agreement annexed to the bill, in which he agreed to convey the property, subject to the mortgage of $3,100 then outstanding, to Verne or to Verne's nominee when requested by Verne. Two years later a mortgage of $3,300 was substituted for the mortgage outstanding at the time of the agreement, and this process was repeated until 1916, when part of the property was sold, and a mortgage put upon the rest of the property for $3,600.

"Early in 1917 Verne wished to raise more money by placing a second mortgage, and the second mortgagee refused to take the mortgage unless Lovejoy would sign the mortgage note. Lovejoy told Verne that he would not sign the note unless he was fully protected, and Verne replied that Lovejoy ran no risk because he

had the title and could protect himself, and as a result Lovejoy signed the note. The second mortgage provided for the payment of the principal in monthly instalments of $50 each. The first instalment was due in September. Verne paid none of the instalments, and allowed the first mortgage to get into arrears, and the taxes for 1917 to remain unpaid.

"Lovejoy called Verne in and told him, in substance, that he, Verne, must quickly find a purchaser for the property, or he would sell it himself, and to this Verne assented. Verne admits that he did not bring to Lovejoy any purchaser, and that he did not after these conversations with Lovejoy have any communication whatever with him for several months. Verne knew that the risk of a foreclosure sale and of a resulting deficit, which his friend Lovejoy would have to pay out of his own pocket, was increasing with every day's delay. Finally Lovejoy's patience was exhausted, and he sold the property to the defendant Shute on April 9, 1918, for $6,000, and this was a fair price.

"The plaintiff does not question Lovejoy's good faith in the matter, nor does he question Lovejoy's account of receipts and payments. He seems to contend that Lovejoy's original agreement under seal could not afterwards be waived or modified by oral agreement, and that, therefore, the sale to Shute is void. But the law of this State has been settled to the contrary for nearly a hundred years. Meanwhile Verne has remained in peaceful enjoyment of property which does not belong to him, and that is all that he could reasonably have expected as a result of the present litigation.

"The bill is to be dismissed with costs."

Later by order of the judge a final decree was entered ordering that the bill be dismissed with costs of $8.16. The plaintiff appealed.

The case was submitted on briefs.

*H. H. Pratt,* for the plaintiff.

*F. C. Allen & R. E. Smith,* for the defendant Shute.

*G. E. Cole,* for the defendant Lovejoy.

CARROLL, J. On April 9, 1918, the defendant Shute purchased from the defendant Lovejoy the property described in the plaintiff's bill for the sum of $6,000, which was found to be a fair price. The plaintiff claims the sale was void for the reason that

he was the real owner, although the title stood in the name of Lovejoy.

It was found by a judge of the Superior Court that in 1912, at the request of the plaintiff, Lovejoy took the legal title to the property in question in order to protect it from Verne's creditors and gave him an agreement in writing to convey the property, subject to a mortgage of $3,100, to Verne or his nominee when requested by him; that in 1917 Verne secured a second mortgage on the premises and Lovejoy signed a note which was to be paid in monthly instalments of $50 each; that Verne paid none of the instalments and Lovejoy informed him that he must find a purchaser or he would sell the property himself; that to this Verne assented; and Lovejoy finally sold the property to the defendant Shute.

On the facts found, the real estate involved in this proceeding was conveyed to Lovejoy in order to protect it from Verne's creditors. This was a fraudulent transaction; and the plaintiff was not entitled to ask for relief from his own fraud. It is firmly established in law and in equity that the court will not aid either party to an illegal transaction where property has been conveyed for the illegal and fraudulent purpose of placing it beyond the reach of the grantor's creditors. After the agreement has been fully executed, the grantor cannot invoke the aid of the court to set the conveyance aside. See *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, and cases cited; *Lawton* v. *Estes,* 167 Mass. 181. The law "will not recognize a right of action founded on the illegal contract, in favor of either party against the other. . . . Equity follows the rule of law and will not interfere for the benefit of one such party against a *particeps criminis.*" *Downey* v. *Charles S. Gove Co.* 201 Mass. 251, 252. As the plaintiff was a party to the fraud he cannot be relieved from its consequences.

It is unnecessary to consider the other defences to the plaintiff's bill.

*Decree dismissing the bill affirmed, with costs.*