NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY & another *vs.* PIERCE COACH LINES, INC., & others.

Suffolk. October 6, 1932. — January 9, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Carrier,* Of passengers: by motor vehicle. *Motor Vehicle. Equity Jurisdiction,* Plaintiff's clean hands. *Damages,* In equity.

The mere fact, that a corporation, maintaining and operating motor buses for the carriage of passengers between certain cities and towns within the Commonwealth, illegally charged fares which were less than the rates scheduled with the department of public utilities pursuant to G. L. (Ter. Ed.) c. 159, § 19, did not preclude it from maintaining a suit in equity against another corporation to enjoin it from maintaining and operating motor buses for transportation of passengers between the same cities and towns in deliberate violation of the provisions of G. L. (Ter. Ed.) c. 159A and by the use of deceitful practices evading those statutory provisions.

In the suit above described, the plaintiff also sought damages, and it was found that the defendant's violation of the statute had caused special damage to the plaintiff. Based on testimony of an expert and upon consideration of the number of passengers carried at specified times and of amounts received from them by the defendant, findings assessing damages were made by a master which were confirmed by the court, the evidence not being reported. *Held,* that complete exactitude is not requisite in the assessment of damages; and the decree awarding damages was affirmed.

In the suit above described, it was proper to enter a decree enjoining the defendant from operating any motor vehicle on any public way within the Commonwealth for the carriage of passengers for hire between the stated termini within the Commonwealth and intermediate points and from issuing, selling and accepting tickets ostensibly for the carriage of passengers from a point within to a point outside the

Commonwealth but for the real and principal purpose of carrying such passengers between the aforesaid points within the Commonwealth, and from employing any other scheme, device or subterfuge of whatever kind which would result in the carriage of passengers between the aforesaid points within the Commonwealth, unless and until the defendant should have obtained the licenses, permits and certificate of public convenience and necessity required by G. L. (Ter. Ed.) c. 159A, the decree specifically providing that nothing therein should be construed as interfering with such carriage of passengers by the defendant as was exclusively and *bona fide* interstate.

BILL IN EQUITY, filed in the Superior Court on December 30, 1931, and described in the opinion.

The suit was referred to a master. Material facts found by the master are described in the opinion. After hearing by *Weed*, J., exceptions by the defendants to the report were overruled and the report was confirmed by an interlocutory decree, and the final decree quoted in the opinion was entered. The defendants appealed.

*W. Gordon*, (*F. Dalton* with him,) for the defendants.

*A. W. Blackman*, for the plaintiffs.

WAIT, J. The New York, New Haven and Hartford Railroad Company and the New England Transportation Company filed a bill in equity to restrain the Pierce Coach Lines, Inc., and other defendants from carrying passengers from certain towns in Massachusetts to and from Boston, Massachusetts, in violation of statutes of the Commonwealth with regard to the carriage of passengers by automobile conveyance, and to obtain damages for injury resulting. A master's report was confirmed by an interlocutory decree which also overruled certain exceptions claimed by the defendants. It found that no injury to the railroad company was established; but that conduct on the part of Pierce Coach Lines, Inc., and of Fred W. Pierce, Evelyn F. Pierce and Eleanor Farley Johnson, who were officers and stockholders in that corporation, violated the laws of the Commonwealth and caused special injury to the New England Transportation Company up to February 17, 1932, in the sum of $1,800. After hearing, a final decree was entered (1) dismissing the bill as to the defendants Pierce Bus Lines, Inc., and William F. Mahoney with costs; (2)

"That the defendants Pierce Coach Lines, Inc., Fred W. Pierce, Evelyn F. Pierce and Eleanor Farley Johnson and all other officers, agents and employees of said corporation are restrained and enjoined from operating any motor vehicle on any public way within the Commonwealth for the carriage of passengers for hire between Boston and North Attleborough and Plainville and intermediate points and from issuing, selling and accepting tickets ostensibly for the carriage of passengers from a point within to a point outside the Commonwealth but for the real and principal purpose of carrying such passengers between the aforesaid points within the Commonwealth, and from employing any other scheme, device or subterfuge of whatever kind which will result in the carriage of passengers between the aforesaid points within the Commonwealth: — unless and until said defendant corporation shall have obtained the licenses, permits and certificate of public convenience and necessity required by G. L. c. 159A (St. 1931, c. 408); provided, however, that nothing in said decree shall be construed as interfering with such carriage of passengers by said defendant corporation as is exclusively and *bona fide* interstate"; (3) assessing damages in $1,800 and authorizing execution to issue therefor with costs in a stated sum.

The case is before us upon appeal from the final decree. The defendants contend that the plaintiffs are precluded from obtaining the assistance of a court of equity because they do not come into court with clean hands; that the evidence does not support the award of damages; and that the injunction granted is too broad. They do not contend that the findings and rulings with regard to their conduct are erroneous; and thus they render it unnecessary to discuss the general merits of the case.

The master's report showed that the charges for fare actually made by the New England Transportation Company to and from Plainville and Boston and North Attleborough and Boston are less than the rates scheduled with the department of public utilities pursuant to G. L. (Ter. Ed.) c. 159, § 19. This action of the company is illegal, and subjects it to a penalty. G. L. (Ter. Ed.) c. 159A,

§ 15.    It is the conduct relied upon as the basis for the claim that the company's hands are unclean; and that there is error in the ruling of the judge that its failure to observe its scheduled fares "is not such unlawful and inequitable conduct, having such immediate and necessary relation to the matter for which relief is sought in this bill, as to require the court to deny its aid to the said plaintiff."

The principle that equity will not interfere in behalf of one who is guilty of illegal or inequitable conduct in the matter with regard to which he seeks its action is well established in our jurisprudence.    *Pelowsky* v. *Silverman,* 245 Mass. 339.    *Caines* v. *Sawyer,* 248 Mass. 368.    *Ewald* v. *Ewald,* 219 Mass. 111.    *Lovejoy* v. *Bailey,* 214 Mass. 134.    *Lyons* v. *Elston,* 211 Mass. 478.    *Snow* v. *Blount,* 182 Mass. 489.    *Lawton* v. *Estes,* 167 Mass. 181.    *Snell* v. *Dwight,* 120 Mass. 9.    *Dunham* v. *Presby,* 120 Mass. 285.

It is impossible to lay down an exact rule by which to determine in all cases where the principle is to be acted upon.    Equity, however, does not demand perfection in the general conduct of a plaintiff as a condition of its aid. It requires that there be connection between the illegal or inequitable action of the plaintiff and the peculiar happenings of the individual case, which shows that in that particular case the culpable conduct of the plaintiff affects his relation to the parties defendant or to the general public so that public harm, injury to good morals, or substantial injustice will result from the exercise of the court's jurisdiction.    *Lurie* v. *Pinanski,* 215 Mass. 229.    *Warfield* v. *Adams,* 215 Mass. 506.    *O'Brien* v. *Shea,* 208 Mass. 528, 534, *et seq.*    *Beekman* v. *Marsters,* 195 Mass. 205, 213, *et seq.*

We find no such connection here.    It is true that the New England Transportation Company insists upon illegal and inequitable conduct of the defendants in regard to transportation of passengers, and that its dereliction has to do with fares for such transportation; but there is no essential relation between a failure like this plaintiff's to notify of a change of fare, and failures such as the defendants' to obtain required licenses, to make deposit of secur-

ity and to secure a certificate that public convenience and necessity require the operation of their buses. The first has to do with an incident in legitimate transportation; the others with prerequisites to securing a right to transport passengers at all. Moreover, the first might well be an inadvertent omission, while the latter are deliberate floutings of the law combined, as the master found, with deceitful practices to evade the law. One probable effect of the transgression of this plaintiff has been to reduce the damages to it caused by the defendants' wrongdoing. They have thus benefited by what they now by their answer ask the court to condemn utterly and they do it in order that they may profit still more. We fail to see how public welfare, good morals, or equitable conduct between man and man would gain by the refusal of equity to interfere.

Obviously it is difficult to assess in money the exact damages done by the defendants' acts. But complete exactitude is not requisite in the assessment of damages. The master and the judge were satisfied that from the testimony of the expert and their consideration of passengers carried at specified times, and the amounts received by the Pierce Coach Lines, Inc., the estimate of damages was not excessive. We see nothing to lead us to think them wrong.

Nor do we think the decree too broad. The termini named are upon the lines of both plaintiffs and defendants, the intermediate points are clearly intended to be those upon the lines as now run, or such places between the named termini as the defendants might seek to use in an effort to circumvent the decree. The meaning cannot well be misunderstood. The decree has, by its terms, injunctive effect only so long as the defendants maintain their contumacious disregard of the law. They have no good ground of appeal.

*Decree affirmed with costs.*